### IN THE UNITED STATES DISTRICT COURT
### FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| EQUAL EMPLOYMENT OPPORTUNITY COMMISSION, *Applicant,* | |
| v. | Case Number: 3:15-cv-01293-SMY-PMF |
| THE AMERICAN COAL COMPANY, *Respondent*. | |

### MEMORANDUM AND ORDER

**YANDLE, District Judge:**

Now before the Court is the Equal Employment Opportunity Commission's ("EEOC") "Application for Order to Show Cause Why a Subpoena Should not be Enforced." (Doc. 1). The EEOC is currently investigating employment discrimination charges filed against the American Coal Company ("American Coal"). In June 2015, the EEOC served a subpoena duces tecum on American Coal requesting various hiring and employment records (Doc. 1-2, "Exhibit 11"). American Coal responded by filing a petition to have the subpoena revoked. (Doc. 1-13, "Exhibit 12"). The EEOC Indianapolis Office denied the petition and directed American Coal to respond to the subpoena (Doc. 1-14, "Exhibit 13"). Following the denial, American Coal notified the EEOC that it would not respond to the subpoena absent a court order (Doc. 1-15, "Exhibit 14"). The EEOC now seeks such an order (Doc. 1). American Coal opposes this request, arguing that the subpoena seeks mostly irrelevant information and that it is unduly burdensome. The parties have briefed these issues and the subject is now ripe for review.

## BACKGROUND

The American Coal Company, a subsidiary of Murray Energy Corporation, operates two coal mines in Galatia, Illinois (Doc. 1-6, p. 2). On March 17, 2014, Pamela Wilson filed an EEOC employment discrimination charge against American Coal (Doc. 1-2, "Exhibit 1"). Wilson's discrimination charge states:

> I am an experienced underground miner and have both underground and surface mine training and certifications. I have applied for employment/submitted a resume for a position as a miner with The American Coal Company and it is my understanding that less qualified men have been hired for the positions, while I, a qualified female miner, haven not been hired. I believe I have been discriminated against because of my gender, female, contrary to Title VII of the Civil Rights Act of 1964.

*Id.* The EEOC notified American Coal that the discrimination charge was filed but the notice stated that "No action is required by you [American Coal] at this time." (Doc. 1-3, "Exhibit 2").

On August 3, 2014, Wilson filed an amended charge against American Coal (Doc. 1-4, "Exhibit 3"). Wilson's amended charge states:

> I obtained my temporary inexperienced underground miner certificate for the state of Kentucky on May 2, 2013. Since that time, I have applied multiple times for employment and or submitted a resume for a position as a miner with the Respondent. I believe that less qualified men have been hired, while I, a qualified female miner, have not been hired. I believe that I and other females have been discriminated against based on our sex, female, in violation of Title VII of the Civil Rights Act of 1964, as amended.

*Id.* On August 6, 2014, the EEOC notified American Coal of the amended charge (Doc. 1-5, "Exhibit 4"). This time however, the EEOC directed American Coal to provide a position statement in response to Wilson's discrimination charge. *Id.* American Coal provided its position statement to the EEOC on September 19, 2014 (Doc. 1-6, "Exhibit 5") the gist of which is that the company chose not to hire Wilson because she lacked experience in the mining industry; the decision was not made on the basis of her gender. *Id.*

The EEOC continued to investigate Wilson's discrimination charge and on January 29, 2015, sent American Coal a letter requesting various company employment and hiring information (Doc. 1-7, "Exhibit 6"). American Coal objected to the bulk of the requests and declined to provide responses (Doc. 1-9, "Exhibit 8"). American Coal also noted that in September 2014, it decided to make an exception for Wilson and invited her to test for a position with the company despite her lack of experience. *Id.* Wilson was then a no-call / no-show for the test and she never requested an alternate testing date. *Id.*

On April 6, 2015, the EEOC sent American Coal a letter reiterating its requests for the employment and hiring information (Doc. 1-10, "Exhibit 9"). American Coal stood by its objections (Doc. 1-11, "Exhibit 10") and on June 23, 2015, the EEOC served the administrative subpoena currently at issue (Doc. 1-12, "Exhibit 11"). The subpoena provides:

The relevant time period is January 1, 2012 to the present:
1. Submit copies of all written rules, policies, practices and procedures during the relevant time period relating to:
   a. Non-discrimination/EEO
   b. Discrimination/retaliation complaint process
   c. Application process
   d. Hiring
   e. Compensation to include salary, wage rate, raises, and/or production bonuses
2. Provide a list in electronic Microsoft Excel (.xls) or comma-delimited (.csv) format on CD-ROM identifying all individuals employed during the relevant time period and which shows each of the following items in a separate cell:
   a. Social security number or employee ID number
   b. Last name
   c. First name
   d. Gender
   e. Race
   f. Date of application
   g. Position(s) applied for
   h. Date of hire
   i. Position at time of hire
   j. Current position
   k. Name of mine where employed
   l. Home address

3

    m. Home telephone number
    n. Date of separation, if applicable
    o. Reason for separation, if applicable
  3. As to all applications received from unsuccessful applicants during the relevant time period, provide a list in electronic Microsoft Excel (.xls) or comma-delimited (.csv) format on CD-ROM identifying each of the following items in a separate cell:
    a. Social security number or employee ID number
    b. Last name
    c. First name
    d. Gender
    e. Race
    f. Date of application
    g. Position(s) applied for
    h. Home address
    i. Home telephone number
  4. Provide complete copies of all application materials, including but not limited to resumes, submitted via mail, facsimile, electronically via company website or in any other manner by the employees identified in response to request number 2 above.
  5. Provide complete copies of all application materials, including but not limited to resumes, submitted via mail, facsimile, electronically via company website or in any other manner by the unsuccessful applicants in response to request number 3 above.

*Id.*

  On July 6, 2015, American Coal filed a petition to revoke the subpoena with the EEOC Indianapolis Office. (Doc. 1-13, "Exhibit 12"). In its petition, American Coal objects to subpoena requests numbered 2 through 5 (Doc. 1-13, p. 7) on the basis that "the information sought is overly broad, unduly burdensome and irrelevant to the allegations at issue." *Id.* On September 9, 2015, the EEOC denied American Coal's petition to revoke the subpoena concluding that the subpoena was not unduly burdensome and that it did not seek irrelevant information (Doc. 1-14, "Exhibit 13").

  In early November, 2015, American Coal informed the EEOC that it would not comply with the subpoena absent a court order (Doc. 1-15, "Exhibit 14"). The EEOC then initiated this action by filing its "Application for Order to Show Cause Why a Subpoena Should not be

Enforced." (Doc. 1). The EEOC asserts that it has the authority to issue the subpoena and that American Coal's refusal to cooperate has hampered its investigation of Wilson's discrimination charge (Doc. 1-16, p. 1).

American Coal filed a response in opposition (Doc. 7) in which it argues that the subpoena exceeds the EEOC's authority. Specifically, American Coal asserts that much of the requested information, such as race information for its employees and applicants, is irrelevant. American Coal further argues that the subpoena is unduly burdensome. Attached to its response is the declaration of Cindy Biggs, American Coal's Human Resources Manager (Doc. 7-2, "Exhibit B"). Biggs states that she is the only human resources employee at American Coal. *Id.* According to Biggs, it would take approximately 250 labor hours to respond to Request 2 in the EEOC's subpoena and a similar amount of effort would be required to respond to Requests 3-5. *Id.* Moreover, in 2015 American Coal laid off more than 430 people, bringing its current work force to approximately 400 employees. *Id.* Biggs states that she is still processing the paperwork from these layoffs. *Id.*

The EEOC filed a reply to American Coal's response. (Doc. 8). It counters that the subpoena is not unduly burdensome and that race information is relevant. *Id*. The EEOC argues that number of labor hours necessary to compile the requested information is not as high as Biggs estimates and that some of the requested information should be in electronic format. *Id.* The EEOC also notes that the subpoena at issue in this action also pertains to Terri Qualls, another female applicant to American Coal. (Doc. 8-1). Qualls filed a discrimination charge with the EEOC in March, 2014 when American Coal declined to hire her. *Id.* The charge was later closed, but Qualls filed a second discrimination charge against American Coal and Murray Energy Corporation in July 2015. *Id.*

The Court later granted the parties leave to file supplemental memoranda and affidavits in lieu of an in court hearing. (Doc. 16). American Coal states in its supplemental brief that it interviewed Terri Qualls twice, but the company declined to offer her a position because she had an attendance problem with a prior employer (Doc. 17, p. 2). American Coal also states "Biggs does not have access to corporate manpower, which is located in Ohio." (Doc. 17, p. 3). Additionally, the corporate office is only minimally involved in the hiring process (the corporate office interviews applicants via Skype) and personnel files are kept onsite at American Coal in hardcopy only. *Id.* Because Biggs is American Coal's only human resources employee, American Coal argues that it would be unduly burdensome for it to respond to the subpoena and that the subpoena requests employment information for an approximately four year period when the EEOC's own regulations at 29 C.F.R. § 1602.14 only mandate that such records be retained for one year. (Doc. 17, p. 6).

American Coal also argues that employee/applicant race information is irrelevant because the discrimination charges only involve gender and that the EEOC already has all the information it needs to address Qualls and Wilson's discrimination claims. (Doc. 17, p. 3-4). The EEOC responds that any argument concerning the merits of the underlying discrimination charges would be premature at this time (Doc. 18, p. 1) and reiterates its position that the information sought is relevant and that the subpoena is not unduly burdensome.

## DISCUSSION

Title VII of the Civil Rights Act of 1964, as amended, prohibits employers from discriminating against employees and job applicants on the basis of an "individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2. Title VII also "sets forth an integrated, multistep enforcement procedure that enables the [EEOC] to detect and remedy instances of

discrimination." *E.E.O.C. v. Shell Oil Co.*, 466 U.S. 54, 62, 104 S. Ct. 1621, 1627, 80 L. Ed. 2d 41 (1984) (internal quote omitted). Whenever a discrimination charge is filed, the EEOC is required to notify the employer of the charge and conduct an investigation as to its allegations. 42 U.S.C. § 2000e-5. When investigating a discrimination charge, the EEOC "shall at all reasonable times have access to … and the right to copy any evidence of any person being investigated … that relates to unlawful employment practices covered by [Title VII] and is relevant to the charge under investigation." 42 U.S.C. § 2000e-8. "If an employer refuses to provide this information voluntarily, the Act authorizes the Commission to issue a subpoena and to seek an order enforcing it." *Univ. of Pennsylvania v. E.E.O.C.*, 493 U.S. 182, 191, 110 S. Ct. 577, 583, 107 L. Ed. 2d 571 (1990) (citing 42 U.S.C. § 2000e-9).

When the EEOC seeks a court order to enforce a subpoena, the ensuing proceedings are intended to be "summary in nature" and the Court's role is "sharply limited." *E.E.O.C. v. Tempel Steel Co.*, 814 F.2d 482, 485 (7th Cir. 1987) - "[a]s long as the investigation is within the agency's authority, the subpoena is not too indefinite, and the information sought is reasonably relevant, the district court must enforce an administrative subpoena." *E.E.O.C. v. United Air Lines, Inc.*, 287 F.3d 643, 649 (7th Cir. 2002) (quoting *id.*).

Although the EEOC's authority to subpoena relevant information is broad, it is not limitless. In determining whether to enforce an EEOC subpoena, the district court must take into consideration the potential burden to the employer. *United Air Lines, Inc.*, 287 F.3d at 653. If the employer can demonstrate that the EEOC's demands are "unduly burdensome or unreasonably broad," the Court may modify or restrict the scope of the subpoena. *Id.*

### *Relevance*

The EEOC is entitled to evidence "relevant to the charge under investigation." 42 U.S.C. § 2000e-8. The Seventh Circuit has held that "this standard of relevance is broader than the standard embodied in the Federal Rule of Evidence 401" and more analogous to the "reasonably calculated to lead to the discovery of admissible evidence" relevance standard set forth in (the now since amended) Rule 26 of the Federal Rules of Civil Procedure. *E.E.O.C. v. Konica Minolta Bus. Sols. U.S.A., Inc.*, 639 F.3d 366, 369 (7th Cir. 2011). As such, the EEOC's burden to establish that the requested information is relevant is "not particularly onerous." *Id.* (quoting *E.E.O.C. v. United Air Lines, Inc.*, 287 F.3d 643, 652 (7th Cir. 2002)). As the Supreme Court has observed, "[s]ince the enactment of Title VII, courts have generously construed the term "relevant" and have afforded the [EEOC] access to virtually any material that might cast light on the allegations against the employer." *E.E.O.C. v. Shell Oil Co.*, 466 U.S. 54, 68-69, 104 S. Ct. 1621, 1631, 80 L. Ed. 2d 41 (1984).

Here, EEOC's subpoena is not overly broad and the information sought is relevant. American Coal declined to hire Pamela Wilson on March 17, 2014. In her initial discrimination charge filed with EEOC, she alleges that American Coal discriminated against her on the basis of her sex. Her amended August 3, 2014 charge asserts the same. The EEOC's subpoena requests information concerning employees that have worked at and applied to work at American Coal from January 1, 2012 through the present. Although such a period is longer than the one year file retention requirement set forth in the EEOC regulations, such period is not so broad as to run afoul of the EEOC's statutory authority.

The EEOC also requests that American Coal identify the race of its employees and job applicants. American Coal asserts that because the discrimination charges allege sex

discrimination, information concerning the race of its employees and job applicants is irrelevant. In support of this argument, American Coal cites to *E.E.O.C. v. S. Farm Bureau Cas. Ins. Co.*, 271 F.3d 209 (5th Cir. 2001), noting that "the Fifth Circuit precluded EEOC from engaging in the conduct it attempts here." Opinions from the Fifth Circuit[1] are of course not binding on this Court, see *Colby v. J.C. Penney Co.*, 811 F.2d 1119, 1124 (7th Cir. 1987) and the Seventh Circuit has in fact held that "evidence concerning employment practices other than those specifically charged by complainants" may be relevant. *Konica Minolta Bus. Sols. U.S.A., Inc.*, 639 F.3d at 369. In this case, information pertaining to the race of applicants and employees may shed light on possible discriminatory hiring practices and thereby, lead to the discovery of admissible evidence. As such, the requested information satisfies the "generous" relevancy standards set forth in *Shell Oil* and its progeny.

### *Burden*

There is no bright line test for determining whether a subpoena is unduly burdensome, but courts generally balance the "likely relevance of the requested material to the investigation" against the personnel or financial burden to the employer. *United Air Lines, Inc.*, 287 F.3d at 654 (quoting *E.E.O.C. v. Ford Motor Credit Co.*, 26 F.3d 44, 47 (6th Cir. 1994)). A subpoena will then be found to be unduly burdensome if the burden of production substantially outweighs the probative value of the requested information, or if compliance would threaten the normal operation of the respondent's business. See *United Air Lines, Inc.*, 287 F.3d at 653; *Konica Minolta Bus. Sols. U.S.A., Inc.*, 639 F.3d at 371.

---

[1] American Coal also overstates the holding in *E.E.O.C. v. S. Farm Bureau Cas. Ins. Co*. 271 F.3d 209 (5th Cir. 2001). In that case, an African American male employee filed a racial discrimination charge against his employer. The EEOC investigated the charge and the employer cooperated with the EEOC. However 19 months after the charge was filed, the EEOC decided to expand the scope of its investigation and it issued a subpoena requesting that the employer provide employee gender information. The District Court declined to enforce the subpoena and the Fifth Circuit affirmed, holding that the lower court's decision was not clearly erroneous.

American Coal asserts that the company would need to expend 250 labor hours to respond to Request 2 and a similar amount of time for Requests 3-5. It also complains that this burden would divert their sole human resources employee, Cindy Biggs, from other necessary company tasks. However American Coal also acknowledges that its corporate human resources office in Ohio manages part of its hiring process. Other than the fact that its employment records are kept in paper format in southern Illinois, it has not provided any reason as to why its corporate human resources department cannot assist in responding to the subpoena or why it could not hire temporary staff to assist. While the Court recognizes that responding to the subpoena would impose a financial and resource burden on American Coal, the relevance and probative value of the information sought to the investigation substantially outweighs that burden.

## CONCLUSION

For the foregoing reasons, the EEOC's "Application for Order to Show Cause against The American Coal Company" is **GRANTED**. American Coal is hereby ordered to respond to the subpoena in full within 120 days from the date of this Order.

SO ORDERED.

Dated: <u>April 26, 2016</u>

*s/ Staci M. Yandle*
**STACI M. YANDLE**
**DISTRICT JUDGE**
